FROF, INC.

v.

**Stuart C. HARRIS and Roger Maggio.**

Civ. A. No. 87–2384.

United States District Court,
E.D. Pennsylvania.

Aug. 17, 1988.

Gary Brownstein, Philadelphia, Pa., for plaintiff.

David Perlman, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

I have before me defendant Roger Maggio's motion to vacate a default judgment and dismiss the plaintiff's complaint. For the following reasons, I will grant the motion in part and deny it in part.

### I. *Factual Background*

The present case results from two actions in this court in the early 1980's. Those actions involved security claims by a number of investors against various Cable/Tel Corporations and their officers and directors. Defendants Maggio and Harris in the present case were officers and/or directors of the Cable/Tel Corporations and were parties in the original litigation.

During the initial litigation, the Philadelphia law firm of Fox, Rothschild, O'Brien and Frankel ("Fox, Rothschild") was retained to provide various legal services to the original defendants. The services of the accounting firm of Asher & Co., Ltd. ("Asher") were also retained in connection with the original litigation. The services of both firms with respect to the original actions amounted to fees in excess of $38,000.

Sometime after the initial litigation, both Fox, Rothschild and Asher assigned their rights to FROF, Inc. ("FROF"). FROF then brought an action against all original Cable/Tel Corporations and Maggio seeking compensation as assignee of Fox, Rothschild's and Asher's rights. This court dismissed that action for lack of prosecution and further denied plaintiff's motion to vacate that order. *See FROF, Inc. v. Cable/Tel Corp.*, No. 85–4062 (E.D.Pa. Jul. 30, 1986); *FROF, Inc. v. Cable/Tel Corp.*, No. 85–4062 (E.D.Pa. Apr. 1, 1987).

FROF then commenced the present action against defendants Maggio and Harris seeking payment under the assignment from Fox, Rothschild and Asher. After defendant Maggio failed to respond to FROF's complaint, this court entered default judgment in favor of FROF in the amount of $43,465.83, plus costs. Defendant Maggio, some nine months later, filed the present motion to vacate the default judgment and dismiss plaintiff's complaint. For the following reasons, I will vacate the default judgment and give the parties leave to submit briefs and appropriate affidavits as to whether this court can exercise personal jurisdiction over defendant Maggio.

### II. *Discussion*

Maggio has moved to vacate the default judgment and dismiss the complaint on various grounds. Maggio argues that the default judgment should be vacated because service of process was improper, notice of intent to take a default judgment was never given, and the requirements of Fed.R. Civ.P. 60 have been met. Additionally, Maggio argues that the default judgment should be vacated and the complaint dismissed because a previous disposition of this same claim bars the present action and also because this court lacks personal jurisdiction over the defendant. I will consider these various arguments separately.

### A. *Service of Process*

Maggio first argues that the default judgment should be vacated because he was never properly served with process under Fed.R.Civ.P. 4. Maggio claims that neither he nor anyone at his residence was ever personally served as required under Rule 4(d)(1) and that his wife found a torn envelope containing the summons and complaint in their mailbox on May 11, 1987. *See* Affidavit of Roger H. Maggio, Exhibit H attached to Defendant's Motion to Vacate Default Judgment and Dismiss the Complaint (filed Apr. 25, 1988). This affidavit is in direct conflict with the signed return of service filed under the penalty of perjury by Daniel J. Boyd, a private process server. *See* Return of Service, Exhibit B attached to Defendant's Motion to Vacate Default Judgment and Dismiss the Complaint. Boyd's return asserts that personal service was effected on defendant Maggio himself on May 12, 1987, at his residence in Tenafly, New Jersey.

Prior to 1983, Rule 4 required that service of process be performed by a U.S. marshal, his deputy, or a special appointee when substantial savings would result. In

1983, however, the Rule was amended to allow service by "any person who is not a party and is not less than 18 years of age." Fed.R.Civ.P. 4(c)(2)(A). Furthermore, the 1983 amendments provide that a U.S. marshal may only serve process in three limited situations. *See* Fed.R.Civ.P. 4(c)(2)(B)(i)–(2)(B)(iii). These amendments "were intended primarily to relieve the United States marshals of the burden of serving summonses and complaints in private civil actions." Fed.R.Civ.P. 4 advisory committee note.

Prior to the 1983 amendments, this court held that a U.S. marshal's return of service was conclusive that proper service had been effected upon a defendant.[1] If the return contained a false statement of the facts, the defendant's sole remedy was to sue the marshal for false return. *See Woods v. Zellers,* 9 F.R.D. 6, 7 (E.D.Pa. 1949). This rule prevented a defendant from possibly avoiding liability on statute of limitations grounds by simply contending that he had been improperly served. In addition, where conflicting accounts are before the court, a U.S. marshal is generally accorded the benefit of the doubt.

Once the 1983 amendments became effective and the marshals' function as process servers was abrogated, some authorities feared that the incidence of "sewer service" would increase in the federal courts.[2] These authorities believed that the possible increase of sewer service, and the fact that federal marshals were no longer involved in process serving might change the weight accorded to a return of service. *See* C. Wright & A. Miller § 1130 at 352; *Siegel, Practice Commentary on Amendment of Federal Rule 4 (eff. Feb. 26, 1983) With Special Statute of Limitations Precautions,* 96 F.R.D. 81, 109 (1982).

Although the law in this court may very well change now that federal marshals have been largely replaced as process servers, I need not decide that here. Under either this court's previous rule which considers the return of service to be irrefutable evidence that proper service was effected, or a more moderate rule which considers the return of service to establish merely a rebuttable presumption that proper service was effected, Boyd's return of service has not been refuted.

Maggio's affidavit merely asserts that neither he nor his wife was personally served in this action and that he was not home on the date when process was allegedly served. Even if this court were to consider that a return of service only creates a rebuttable presumption that proper service was effected, a bare allegation by a defendant that he was improperly served cannot be allowed to bely the private process server's return. Such a holding would overwhelm the clerk's office with these claims. Accordingly, Maggio's affidavit which asserts that he was improperly served is insufficient to vacate the default judgment.[3]

**B. *Notice of Default***

▮ Defendant next argues that the default judgment should be vacated as FROF

1. *See, e.g., Woods v. Zellers,* 9 F.R.D. 6 (E.D.Pa. 1949) ("the return of the marshal constitutes upon its face a lawful return and the defendant cannot be permitted to contradict it and charge in efect that it is a false return."). *But cf. Halpert v. Appeby,* 23 F.R.D. 5 (S.D.N.Y.1958) ("the marshal's return may be impeached but only by strong and convincing evidence. The unseemly inquiry into the truth of the official certificate need not be pursued unless an almost irrefragable case is presented against it.")

2. *See e.g.,* C. Wright & A. Miller § 1130, at 352 ("[a]lthough the amended Rule 4 will decrease the burden on the federal marshals, it also may bring with it the danger of an increased practice of 'sewer service.'" *(footnote omitted))*.

"Sewer service" describes the practice of filing a complaint and failing to serve it upon the named defendant. The object of this practice is to obtain a default judgment after the time for response has passed and garnish wages to secure recovery. *See Recent Cases, Standing— United States Has Nonstatutory Authority Under Commerce and Due Process Clauses to Bring Suit to Enjoin "Sewer Service" Practices by Private Business—United States v. Brand Jewelers, Inc.,* 318 F.Supp. 1293 (S.D.N.Y.1970), 84 Harv.L.Rev. 1930 (1971).

3. Had the defendant submitted additional evidence such as affidavits by others or receipts that placed him elsewhere at the time process was allegedly served, his claim might be tenable.

failed to give notice of default pursuant to Fed.R.Civ.P. 55(b). Rule 55(b)(2) provides that "[i]f the party against whom judgment by default is sought has appeared in the action, the party . . . shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application." *Id.* Although Maggio failed to formally appear in this action, he argues that he sufficiently manifested his intent to defend this action to require notice of default under Rule 55(b)(2).

The federal courts recognize that a party may appear in two ways for the purposes of Rule 55(b)(2). First, a party can formally appear in an action by filing a notice of appearance with the court. Second, a party can make an appearance by implication where he has "indicated to the moving party a clear purpose to defend the suit." *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder L.,* 432 F.2d 689, 691 (D.C. Cir.1970). In the present case, defendant argues that a letter from his attorney to the plaintiff's attorney manifested a sufficiently clear intent to defend the suit which established an appearance by implication and triggered the notice requirements of Rule 55(b).

Defendant's attorney, nine days after the putative service, sent a letter to the plaintiff's attorney explaining that proper service had not been made on the defendant and inquiring whether the plaintiff's attorney was contending that Maggio had been effectively served by some substituted or other service. *See* Letter from M. Gladstone to G. Brownstein, dated May 21, 1987, Exhibit C attached to Defendant's Motion to Vacate Default Judgment and Dismiss the Complaint. This letter sufficiently indicated that the defendant intended to defend in the case and notice prior to the application of default judgment was necessary. In fact, the letter reads: *"Before engaging Pennsylvania counsel on Mr. Maggio's behalf,* I would appreciate your advising me whether you contend that Mr. Maggio has been effectively served by substituted or other service and, if so, the basis for that position." *Id.* (emphasis added).

Not only would it be unfair to allow a default judgment without notice in this situation, considering the letter by defendant's attorney, it is surprising that plaintiff's counsel did no more than leave a phone message when learning that service might have gone astray. Defendant's attorney, believing that service had not been properly effected, responded to the alleged improper service and indicated an intent to defend if it were plaintiff's position that service had been proper. Since the letter by defendant's attorney amounted to an appearance by implication, the failure to send notice pursuant to Rule 55(b)(2) requires that this court's default judgment dated July 6, 1987 be vacated and this case reopened.

## C. *Rule 60*

The default judgment may alternatively be vacated pursuant to Fed.R.Civ.P. 60(b). Rule 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . . The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60(b). Rule 60, thus, imposes two requirements before a judgment may be vacated: First, that there is a justifiable reason to vacate the judgment; and second, that the motion be made within a reasonable time and not more than one year after the judgment in certain circumstances.

When considering a defendant's motion to vacate a default judgment, the Third Circuit requires that the court undertake two additional inquiries: "(1) whether granting of the motion would work prejudice to the plaintiffs, and (2) whether a meritorious defense had been presented by the defendant in support of his motion to set aside the default." *Medunic v. Lederer,* 533 F.2d 891, 893 (3d Cir.1976). "In doing so, . . . a standard of 'liberality,' rath-

er than 'strictness' should be applied in acting on a motion to set aside a default judgment, and ... '[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits.'" *Id.* 893–94 (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245–46 (3d Cir.1951)).

In addition, "'matters involving large sums should not be determined by default judgment if it can be reasonably avoided' since 'the interests of justice are better served by a trial on the merits.'" *Livingston Powdered Metal, Inc. v. NLRB*, 669 F.2d 133, 136–37 (3d Cir.1982) (quoting *Tozer*, 189 F.2d at 245). Whether the defendant intentionally caused the default should also be considered when deciding whether to vacate a default judgment. *Id.* at 136.

■ Defendant's motion to vacate the default judgment is appropriate under subsection (1) of Rule 60(b).[4] That subsection considers the following valid reasons to vacate a default judgment: "(1) mistake, inadvertence, surprise, or excusable neglect ..." Fed.R.Civ.P. 60(b)(1). The defendant's attorney in this case believed that the defendant was improperly served and thus neglected to respond by answer or motion. The defendant's attorney, after responding by sending a letter to the plaintiff's attorney questioning service of process, however, received no notice of intent to take a default judgment as required under Rule 55(b)(2). Considering the circumstances, defendant's failure to respond was excusable.

■ Defendant's motion to vacate the default judgment was also timely. Although defendant waited nine months from the entry of default before moving to vacate the judgment, his motion was within the time frame established in Rule 60(b). Rule 60(b)(1) requires that a motion to vacate be made not more than one year after the judgment. Since defendant's motion was filed nine months after the entry of default, his motion under Rule 60(b)(1) is within the time frame of the Rule.

The defendant has also asserted a meritorious defense to the claims involved. The gravaman of the plaintiff's complaint is that Fox, Rothschild and Asher provided substantial services to the defendants in connection with previous litigation and that the right to collect for these services was assigned to FROF for valuable consideration. To this, the defendant's affidavit asserts that "[d]uring the *Kirschner* litigation, as well as, all other lawsuits arising out of the Cable/Tel investment activities, I retained and paid my own counsel to represent me. I did not participate in any joint defense with my partners in Cable/Tel with the defense of the corporation entities." Affidavit of Roger H. Maggio, Exhibit H, attached to Defendant's Motion to Vacate Default Judgment and Dismiss the Complaint. If true, this assertion would provide a sufficient defense to the plaintiff's claims. If defendant Maggio retained his own counsel and did not participate in any joint defense with his other partners in the previous litigation, he would not be personally liable for the costs of the other defendants' defense.

The plaintiff has failed to indicate how it will be prejudiced if defendant's motion to vacate is granted. Where the plaintiff has failed to establish how it will be prejudiced by granting the motion to vacate, the default judgment should be set aside and the case tried on the merits. *See Liberty Nat'l Bank & Trust Co. v. Yackovich*, 99 F.R.D. 518, 521 (W.D.Pa.1982). In addition, plaintiff had not attempted to collect on its default judgment as of the time defendant filed its motion to vacate the default judgment, and it is difficult to believe that an adjudication on the merits would prejudice the plaintiff.

Finally, this case involves a claim for more than $43,000. While this is not an enormous amount of money when compared to some awards, it is considerable and its disposition should not be determined by a default judgment. *Livingston Powdered Metal*, 669 F.2d at 136–37.

---

**4.** Although defendant moves under all subsections of Rule 60(b), only subsection (1) is appli-    cable.

Since there is no evidence that the defendant intentionally caused the default and the other requirements under Rule 60(b) have been met, defendant's motion to vacate the default judgment will be granted.

### D. *Res Judicata*

■ Defendant next argues that plaintiff's complaint should be dismissed as the claim is barred by the involuntary dismissal of the same claim in an earlier case. In 1985, FROF commenced an action against the various Cable/Tel corporations and Maggio. After FROF failed to properly prosecute its case, this court dismissed for lack of prosecution. *See Frof v. Cable/Tel,* No. 85–4062 (E.D.Pa. Jul. 30, 1986).

Fed.R.Civ.P. 41(b) provides that, unless otherwise specified in a court's order, an involuntary dismissal is one with prejudice and operates as an adjudication on the merits. This adjudication, it has been held, acts to bar a later action of the same case. *See Dupree v. Jefferson,* 666 F.2d 606, 610 n. 25 (D.D.C.1981). Although my order dismissing for non pros failed to specify whether it was with or without prejudice, my usual practice is to specify that dismissals for lack of prosecution are without prejudice, and the failure to specify in this case was merely a clerical oversight. Furthermore, I cannot believe that I intended the dismissal to operate with prejudice in this case. Hence, it would be patently unfair to prejudice the plaintiff with this burden for something that was a mere clerical error.

### E. *Personal Jurisdiction*

The defendant further contends that the plaintiff's complaint should be dismissed as this court lacks personal jurisdiction over the defendant. On this issue, the facts are equivocal. Plaintiff's complaint alleges that the defendant contracted with the Philadelphia law firm of Fox, Rothschild and the accounting firm of Asher. Defendant, on the other hand, claims that he never entered into any joint defense with his other partners in the earlier litigation. Although this goes to the merits of the case, it also controls whether this court can exercise jurisdiction over the defendant Maggio.

Because there is such a disparity between the accounts presented, I am giving counsel leave to fully brief the issue of personal jurisdiction with supporting affidavits where necessary. Briefs and affidavits shall be filed with this court within twenty (20) days of this order.

An appropriate order follows.

### ORDER

AND NOW, this 17th day of August, 1988, it is hereby Ordered that

1. Defendant's motion to vacate the default judgment is GRANTED.

2. Defendant's motion to dismiss the complaint on grounds of res judicata is DENIED.

3. The parties are given leave to fully brief the issue of personal jurisdiction with supporting affidavits where necessary. Briefs and affidavits shall be filed with the court within twenty (20) days of this order.

AND IT IS SO ORDERED.